# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FRANCISCO PEREZ,** | : | |
| **Plaintiff** | : | **No. 1:22-cv-01087** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **SUPERINTENDENT KEVIN** | : | |
| **RANSOME, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Pro se Plaintiff Francisco Perez ("Plaintiff"), who is a state prisoner currently incarcerated at State Correctional Institution Dallas ("SCI Dallas") in Dallas, Pennsylvania, has commenced the above-captioned action by filing a complaint pursuant to the provisions of 42 U.S.C. § 1983 ("Section 1983"), asserting violations of the Eighth and Fourteenth Amendments to the United States Constitution, as well as state law claims for medical malpractice and fraud.  (Doc. No. 1.)  In accordance with the Prison Litigation Reform Act,[1] the Court has conducted an initial review of Plaintiff's complaint.  For the reasons that follow, the Court will partially dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted. The Court will, however, grant Plaintiff leave to file an amended complaint.

---

[1]  See The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

## I.    BACKGROUND

On July 12, 2022, Plaintiff filed his Section 1983 complaint in this Court. (Doc. No. 1.)  On that same date, he also filed a motion for leave to proceed in forma pauperis and his prisoner trust fund account statement.  (Doc. Nos. 2, 3.)  The Court, having reviewed Plaintiff's motion and trust fund account statement, will grant him leave to proceed in forma pauperis and will deem his complaint filed.

In his complaint, Plaintiff names as defendants Johnson and Johnson Incorporated ("Johnson & Johnson"), the Bureau of Health Services at SCI Dallas, the Medical Department at SCI Dallas, and the following individuals, all of whom worked at SCI Dallas during the period of time relevant to Plaintiff's claims: Superintendent Kevin Ransome ("Ransome"); Dr. Prince ("Prince"); PA Woolfolk ("Woolfolk"); CRNP Deboer ("Deboer"); CHCA Martin ("Martin"); Corrections Officer Bohinski ("Bohinksi"); Nurse Jane Doe (1) ("Jane Doe (1)"); and Nurse Jane Doe (2) ("Jane Doe (2)").  (Doc. No. 1 at 3-6.)

Plaintiff's complaint is comprised of two (2) parts: a form complaint (id. at 1-9) and a typed complaint (id. at 10-24.)  In his form complaint, Plaintiff generally avers that the events giving rise to his claims occurred at SCI Dallas on or about April 9, 2021, when the Johnson & Johnson vaccine for COVID-19 was administered to him only days after he had received a cortisone shot.  (Id. at 7.) Plaintiff claims that this combination of the vaccine and the cortisone shot caused

the left side of his "chest/arm/shoulder[,] and bicep to lose mobility/numbness" and left him "physically impaired."  (Id.)  Plaintiff further claims that, following this incident, he was not afforded adequate medical care, and he was not allowed to be examined at an outside medical facility for "such injuries."  (Id.)

In his typed complaint, Plaintiff raises additional allegations in further support of his claims.  (Id. at 10-24.)  More specifically, Plaintiff alleges that, on April 9, 2021, he arrived at the SCI Dallas Medical Department to be screened and to have the Johnson & Johnson vaccine administered to him.  (Id. ¶¶ 16-17.)  Plaintiff alleges that, when he was screened by Defendant Jane Doe (1), he explained to her that he had a cortisone shot a few days prior.  (Id. ¶¶ 17-18.)  Plaintiff alleges, however, that he was directed, presumably by Defendant Jane Doe (1), to have the Johnson & Johnson vaccine administered by Defendant Jane Doe (2).  (Id. ¶ 18.)  Plaintiff alleges that he also explained to Defendant Jane Doe (2) that he had a cortisone shot a few days prior.  (Id. ¶ 19 (alleging that he asked Defendant Jane Doe (2) whether the vaccine would have any adverse effects in light of his recent cortisone shot).)  Plaintiff alleges that Defendant Jane Doe (2) assured him that there would not be any adverse effects (id. ¶ 20), and she administered the vaccine (id. ¶ 21).

After being administered the Johnson & Johnson vaccine, Plaintiff returned to his housing unit where he ultimately "lost mobility on the left side of his chest/arm/ bicep[,] and shoulder."  (Id. ¶ 22.)  Plaintiff alleges that he has since

3

suffered from "pain/numbness," that he "has become physically impaired[,]" and that he is "possibly permanently disfigured." (Id. ¶ 23 (alterations in original omitted).)  As a result of these medical complaints, Plaintiff alleges that he signed up for "[s]ick [c]all" at SCI Dallas Medical Department.  (Id. ¶ 24.)   At sick call, the "[p]hysican and/or [d]octor" could not identify the cause for Plaintiff's "loss of mobility/physical impairment/disfigurement." (Id. ¶ 25.) Although Plaintiff requested to be examined at an outside medical facility, the SCI Dallas Medical Department would not consider this option.  (Id. ¶ 26.)

In August of 2021, Plaintiff had a follow-up visit with Defendant Prince.  (Id. ¶ 35.)  During that visit, Plaintiff explained to Defendant Prince that he had received a cortisone shot a couple days before receiving the Johnson & Johnson vaccine, and Plaintiff reiterated his request to be examined at an outside medical facility for the injuries he suffered from after receiving that vaccine.  (Id. ¶¶ 36-37.)  Plaintiff alleges that Defendant Prince agreed that the vaccine should have been "delayed" for a few weeks.  (Id. ¶ 38.)  Plaintiff alleges that Defendant Prince also "indicated that the State/SCI Dallas lacks funding" to send Plaintiff to an outside medical facility and, thus, "adamantly refused" Plaintiff's request.  (Id. ¶¶ 36, 38.)

Plaintiff alleges that he spoke with numerous individuals from SCI Dallas about his injuries stemming from the Johnson & Johnson vaccine and about the SCI Dallas Medical Department's refusal to have him examined at an outside medical

facility. (Id. ¶ 28.)  More specifically, Plaintiff alleges that Defendant Martin, the assigned grievance coordinator, responded to a grievance that Plaintiff had filed, wherein he complained about the Johnson & Johnson vaccine that was administered to him on April 9, 2021.[2] (Id. ¶ 29.) Plaintiff appears to allege that Defendant Martin denied his grievance because the vaccine was administrated in Plaintiff's right arm while Plaintiff suffered from various symptoms on his left side.  (Id.; id. ¶ 32.) Plaintiff contends, however, that Defendant Martin exercised "deception/fraud" because he is a corrections officer at SCI Dallas who does not have any expertise in medicine and, thus, should have known that any decision to opine on the medical field was "inconsistent with the rudimentary demands of justice." (Id. ¶¶ 30-32.)

Plaintiff alleges that he appealed Defendant Martin's denial of his grievance to Defendant Ransome, the facility manager.  (Id. ¶ 39.)  Plaintiff alleges that Defendant Ransome concluded, among other things, that Defendant Martin had adequately addressed Plaintiff's concerns regarding the adverse effects that he was experiencing from the Johnson & Johnson vaccine. (Id. ¶ 42.) As a result, Defendant Ransom upheld Defendant Martin's denial of Plaintiff's grievance.  (Id.)  Plaintiff alleges that he appealed Defendant Ransome's decision to final review (id. ¶ 43), but that the decision was upheld, and Plaintiff's grievance was denied (id. ¶ 44).

---

[2]  Plaintiff does not specify when he filed this grievance.

Plaintiff appears to allege that he subsequently filed another grievance with respect to the adverse side effects he suffered from the Johnson & Johnson vaccine. (Id. ¶ 54 (alleging that he filed this grievance on May 16, 2022).)  Much like his other grievance, Plaintiff alleges that, even though he appealed this grievance to final review, his grievance was ultimately denied.  (Id. ¶¶ 55-56 (alleging that after his grievance was denied at the initial level of review, he appealed to Defendant Ransome who upheld that decision, and that, although he subsequently appealed Defendant Ransome's decision to final review, the denial was upheld).)

In addition to filing these two (2) grievances, Plaintiff alleges that, on October 6, 2021, he requested copies of his medical records from Defendant SCI Dallas Medical Department.  (Id. ¶ 47.)  In addition, Plaintiff alleges that, on October 20, 2021, he complained about the adverse side effects he had received from the Johnson & Johnson vaccine[3] (id. ¶ 48) and that, on November 29, 2021, he sent a DC-135(a)/Request to Staff slip to Defendant Bohinksi, who responded to Plaintiff's request by stating that Plaintiff was being seen by medical.  (Id. ¶ 49.)

In connection with all of these allegations, Plaintiff asserts violations of his constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution (id. at 8; id. ¶¶ 58-60), as well as state law claims for medical

---

[3]  Plaintiff does not specify to whom he complained.

malpractice and fraud (id. at 8; id. ¶¶ 57, 69).  As for relief, Plaintiff seeks declaratory and monetary relief.  (Id. ¶ 70.)[4]

## II.    LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2), district courts are required to review complaints in civil actions where a litigant is proceeding in forma pauperis.  See 28 U.S.C. § 1915(e)(2).  If the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief, then the district court must dismiss the complaint.  See id.  In dismissing claims under § 1915(e)(2), district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999).  To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

When evaluating the plausibility of a complaint, the Court is required to "accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be

---

[4] Although Plaintiff vaguely claims "discrimination" in his complaint (Doc. No. 1 at 8), the legal and factual basis for this claim is unclear to the Court.  Because the Court will ultimately provide Plaintiff with the opportunity to amend his complaint, Plaintiff, should he wish to do so, shall clarify and expound on the factual and legal basis for his purported discrimination claim.

entitled to relief under any reasonable reading of the complaint."   See Mayer v. Belichick, 605 F.3d 223, 229 (3d Cir. 2010); Kedra v. Schroeter, 876 F.3d 424, 434 (3d Cir. 2017) (stating that the court "must accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]" (citation and internal quotation marks omitted)).

Additionally, in the specific context of pro se prisoner litigation, a district court must be mindful that a document filed pro se "is to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976).   A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"   See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted).

## III.   DISCUSSION

### A.   Section 1983

Plaintiff has filed his complaint pursuant to Section 1983, asserting a violation of the Eighth and Fourteenth Amendments to the United States Constitution, as well as state law claims for medical malpractice and fraud.  (Doc. No. 1.)  Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,

8

shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id. Thus, "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." See Shuman v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted). Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." See id. (citation omitted).

### 1.    Claims against Johnson & Johnson

Plaintiff has named Johnson & Johnson as a defendant in the complaint. (Doc. No. 1 at 4.)  "To state a claim under [Section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).  The threshold issue of whether a defendant is acting under color of state law—that is, whether the defendant is a state actor—depends upon "whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." See Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009) (citation and internal citation and quotation marks omitted)).  Here, Defendant Johnson & Johnson is a private company.  Moreover, there are no allegations in the

9

complaint which would suggest that this Defendant is a state actor. Accordingly, the Court finds that Plaintiff's complaint fails to state a Section 1983 claim upon which relief can be granted against Defendant Johnson & Johnson. Plaintiff's Section 1983 claims against this Defendant will, therefore, be dismissed.

### 2.  Claims Against the SCI Dallas Medical Department and Bureau of Health Services

Plaintiff has also named the SCI Dallas Medical Department and Bureau of Health Services as Defendants in the complaint. (Doc. No. 1 at 4.) However, these entities are not amenable to suit under Section 1983 since they have Eleventh Amendment immunity and are not considered "persons" for purposes of Section 1983.

Indeed, "[a]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." See Kentucky v. Graham, 473 U.S. 159, 169 (1985); Lombardo v. Pennsylvania, 540 F.3d 190, 194 (3d Cir. 2008) (explaining that "[t]he immunity of States from suit in the federal courts is a fundamental aspect of state sovereignty"). It is well-established that the Commonwealth of Pennsylvania has not waived this immunity, see 42 Pa. Const. Stat. Ann. § 8521(b), and that Congress did not abrogate the States' Eleventh Amendment immunity in enacting Section 1983. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989) (stating that "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal

forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties" (citation omitted)); Quern v. Jordan, 440 U.S. 332, 341 (1979) (explaining that Section 1983 does not override the States' Eleventh Amendment immunity).

Moreover, this Eleventh Amendment immunity extends to all agencies or departments "having no existence apart from the state." See Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981) (citation omitted).  As such, the Pennsylvania Department of Corrections ("DOC") and its institutions, such as SCI Dallas, are entitled to the same Eleventh Amendment immunity that the Commonwealth enjoys. See 71 P.S. § 61(a); Bertalan v. SCI Graterford State Prison, No. 18-cv-00069, 2018 WL 491007, at *1 (E.D. Pa. Jan. 18, 2018) (explaining that the state correctional institution's medical department was entitled to Eleventh Amendment immunity because it is, essentially, an "arm[ ] of the Commonwealth").  Similarly, the Bureau of Health Services is also entitled to this same Eleventh Amendment immunity.  See Sloan v. Chambers, No. 12-cv-01954, 2016 WL 4245550, at *13 (M.D. Pa. Aug. 11, 2016) (explaining that Eleventh Amendment immunity "applies to a subordinate agency like the Bureau of Health Services" (citation and internal quotation marks omitted)); Woodell, 2019 WL 4139264, at *8 (stating that the Bureau of Health Care Services is not amenable to suit under Section 1983 because it has Eleventh Amendment immunity).

Furthermore, the SCI Dallas Medical Department and Bureau of Health Services are not considered "persons" for purposes of Section 1983 and, therefore, are not amenable to suit under this statute.  See 42 U.S.C. § 1983; Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973) (concluding that the state prison medical department could not be sued under Section 1983 since it is not a person); Gerholt v. Wetzel, 858 F. App'x 32, 34 (3d Cir. 2021) (citing Fischer and concluding the same); Woodell, 2019 WL 4139264, at *8 (explaining that the Bureau of Health Care Services is not a "person" and, thus, is not amenable to suit under Section 1983).

Thus, for all of the reasons, the Court finds that Plaintiff's complaint fails to state a claim upon which relief can be granted against Defendants SCI Dallas Medical Department and Bureau of Health services.  Plaintiff's Section 1983 claims against these Defendants will, therefore, be dismissed from the complaint.

### 3.    Eighth Amendment Claims

In the complaint, Plaintiff appears to be asserting that the individual Defendants failed to provide him with adequate medical care in violation of the Eighth Amendment.  (Doc. No. 1.)  In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."  See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  Prison officials violate the Eighth Amendment "when they are deliberately

indifferent to an inmate's serious medical need." See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citing Estelle, 429 U.S. at 106).

"[T]he concept of a serious medical need, as developed in Estelle, has two components, one relating to the consequences of a failure to treat and one relating to the obviousness of those consequences." See Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991). The "condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death[,]" and "the condition must be one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." See id. (citation and internal quotation marks omitted).

The concept of "deliberate indifference" requires that the prison official actually knew of and disregarded "an excessive risk to inmate health or safety[.]" See Farmer v. Brennan, 511 U.S. 825, 837 (1994). The Third Circuit has found deliberate indifference when a "prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." See Rouse, 182 F.3d at 197 (citation omitted).

### a.    Medical Defendants

Defendants Prince, Deboer, and Woolfolk are the medical defendants named in Plaintiff's complaint.  (Doc. No. 1 ¶ 7 (identifying Defendant Prince as a medical doctor); id. ¶ 8 (identifying Defendant Deboer as a CRNP); id. ¶ 9 (identifying Defendant Woolfolk as a PA).)  The Court addresses these medical defendants in turn below.

### i.    Defendant Prince

In the complaint, Plaintiff alleges that in August of 2021, he had a follow-up appointment with Defendant Prince because of the "severe injuries" that he suffered from after receiving the Johnson & Johnson vaccine.  (Id. ¶ 35.)  During that visit, Plaintiff explained to Defendant Prince that he had received a cortisone shot a couple days prior to receiving the vaccine, and Plaintiff also requested that he be examined at an outside medical facility for the injuries he sustained after receiving that vaccine. (Id. ¶¶ 36-37.)  Plaintiff alleges that Defendant Prince agreed that the Johnson & Johnson vaccine should have been delayed for a few weeks.  (Id. ¶ 38.)  However, Plaintiff alleges that Defendant Prince refused to have Plaintiff examined at an outside facility, indicating "that the State/SCI Dallas lacks funding."  (Id. ¶¶ 36, 38.)

Here, the Court finds that Plaintiff's complaint has, by the thinnest of margins, stated an Eighth Amendment claim against Defendant Prince.  In liberally construing the complaint, Plaintiff alleges the following: that, after he received the Johnson &

Johnson vaccine, he lost mobility and experienced numbness on the left side of his "chest/arm/shoulder[,] and bicep" and that he was "physically impaired[;]" that Defendant Prince subsequently examined Plaintiff during a follow-up visit at the SCI Dallas Medical Department and seemingly acknowledged these complaints and agreed with Plaintiff that the administration of the vaccine should have been delayed for a few weeks; that Defendant Prince "adamantly refused" to refer Plaintiff for treatment to an outside medical facility for non-medical reasons, i.e., for reasons related to a lack of funding within the Commonwealth of Pennsylvania or SCI Dallas; and finally, that following this examination by Defendant Prince, Plaintiff continued to suffer from his various medical complaints. (Id. ¶¶ 35-40.)   Thus, in liberally construing the complaint, the Court finds that these allegations are sufficient to survive the Court's initial review of Plaintiff's Eighth Amendment claim against Defendant Prince.  Plaintiff is, therefore, permitted to proceed on this claim.

### ii.      Defendants Deboer and Woolfolk

In order for liability to attach under 42 U.S.C. § 1983, Plaintiff must sufficiently allege that each defendant was personally involved in the act or acts that he claims violated his federally protected rights.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual

knowledge of and acquiescence in the wrongful conduct."  <u>Chavarriaga v. New Jersey Dep't of Corr.</u>, 806 F.3d 210, 222 (3d Cir. 2015) (citing <u>Rode</u>, 845 F.2d at 1207); <u>Dooley v. Wetzel</u>, 957 F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting <u>Rode</u>, 845 F.2d at 1207)).

Here, there is a complete absence of allegations in Plaintiff's complaint that would give rise to a plausible inference that Defendants Deboer or Woolfolk were personally involved in any asserted deprivation of Plaintiff's constitutionally protected rights.  While these two (2) medical defendants have been named in the caption of the complaint (Doc. No. 1 at 2) and have also been listed as Defendants in the "DEFENDANT(S)" section of the complaint (<u>id.</u> at 5), they have not been mentioned anywhere else in the body of the complaint.  Without such allegations of personal involvement, however, liability cannot be imposed against Defendants Deboer and Woolfolk under Section 1983.  Thus, the Court finds that Plaintiff's complaint fails to state a claim upon which relief can be granted against Deboer and Woolfolk.  Plaintiff's purported Eighth Amendment claims against these Defendants will, therefore, be dismissed from the complaint.

**b.    Non-Medical Defendants**

Defendants Martin, Ransome, and Bohinski are non-medical Defendants. (Doc. No. 1 ¶ 3 (identifying Defendant Ransome as the Superintendent at SCI Dallas); id. ¶¶ 29-34 (identifying Defendant Martin as the "CHCA" and corrections officer who reviewed at least one of Plaintiff's grievances); id. ¶ 13 (identifying Defendant Bohinski as a corrections officer).)   With respect to each of these Defendants, Plaintiff challenges their responses to his grievances and inmate request slip, wherein he complained of inadequate medical care.  (Doc. No. 1 ¶¶ 29-34, 39 (concerning Defendant Martin's response to Plaintiff's initial grievance); id. ¶¶ 39, 42-43 55, 63 (concerning Defendant Ransome's responses to Plaintiff's grievance appeals); ¶ 49 (concerning Defendant Bohinski's response to Plaintiff's inmate request slip).)  In liberally construing the complaint, Plaintiff appears to be claiming that their various responses to his complaints of inadequate medical care violated his constitutional rights under the Eighth Amendment.  (Id. at 8; id. ¶¶ 59-60.)

The Court, however, is unpersuaded.   As set forth by Plaintiff's own allegations, when these non-medical Defendants responded to his complaints of inadequate medical care, each one of them pointed to the medical care that Plaintiff was already receiving or to the medical treatment plan that was in effect for Plaintiff. (Doc. No. 1 ¶ 33 (alleging that Defendant Martin explained to Plaintiff that "the provider had ordered blood work/prednisone and a physical therapy consult with

respect to the incident at bar"); id. ¶¶ 42, 45 (alleging that Defendant Ransome had referenced Plaintiff's diagnostic testing, course of treatment, and treatment plan, as well as follow-up appointments that were scheduled); id. ¶ 49 (alleging that Defendant Bohinski explained to Plaintiff that he was being seen by medical).)

Accordingly, the Court finds that, while these various responses to Plaintiff's grievances and inmate request slip show knowledge on the part of Defendants Martin, Ransome, and Bohinski of Plaintiff's medical complaints, these responses do not show any deliberate indifference to such medical complaints because—as set forth by Plaintiff's own allegations—it was their understanding that Plaintiff was already being treated for such complaints by the medical staff at SCI Dallas.  See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (holding that neither of the non-medical defendants could be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor"); Pearson v. Prison Health Serv., 850 F.3d 526, 539 (3d Cir. 2017) (recognizing the holding in Durmer); Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (concluding that, absent knowledge that prison doctors are  mistreating or not treating a prisoner, "a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference"). Thus, Plaintiff's Eighth Amendment claims against Defendants Martin, Ransome, and Bohinski will be dismissed from the complaint.

18

### 4.    Fourteenth Amendment Claim

In liberally construing the complaint, Plaintiff appears to be asserting a violation of his constitutional rights under the Fourteenth Amendment based upon his contention that Defendant SCI Dallas Medical Department did not provide him with copies of his medical records.  (Doc. No. 1 ¶ 47.)  As explained above, this Defendant is not amenable to suit under Section 1983.  Moreover, Plaintiff has not explained how he was harmed by the alleged failure of this Defendant to provide him with copies of his medical records.  Moreover, the Court is not aware of any "state or federal constitutional right requiring that a state prisoner be provided with copies of his medical files upon request."  See Hearns v. Johnson, No. 16-cv-3284, 2016 WL 4690386, at *6 (D.N.J. Sept. 6, 2016); Hetzel v. Swartz, 909 F. Supp. 261, 263 (M.D. Pa. 1995) (dismissing a prisoner-plaintiff's due process claim that he was unlawfully denied copies of his medical records as being "clearly meritless").  Accordingly, the Court finds that Plaintiff's complaint fails to state a Fourteenth Amendment claim upon which relief can be granted against Defendant SCI Dallas Medical Department.  As such, this claim will be dismissed from Plaintiff's complaint.

### B.   State Law Claims

#### 1.   Medical Malpractice[5]

In the complaint, Plaintiff appears to be asserting medical malpractice claims against Defendant Prince, a medical doctor at SCI Dallas (Doc. No. 1 at 8; id. ¶¶ 35-38), and against Defendants Jane Doe (1) and Jane Doe (2), Nurses at SCI Dallas (Doc. No. 1 at 8; id. ¶¶ 17-21). Under Pennsylvania law, in order for a plaintiff to prevail on a medical malpractice claim, "the plaintiff must prove that the defendant's treatment fell below the appropriate standard of care." See Brady v. Urbas, 111 A.3d 1155, 1161 (Pa. 2015) (citations omitted); Toogood v. Rogal, 824 A.2d 1140, 1145 (Pa. 2003) (plurality opinion) (stating that "medical malpractice can be broadly defined as the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient . . . ").

Thus, "the basic elements of medical malpractice and ordinary negligence are the same[.]" See Ditch v. Waynesboro Hosp., 917 A.2d 317, 322 (Pa. Super. Ct. 2007), aff'd, 17 A.3d 310 (Pa. 2011) (citation omitted). Thus, in order to state a prima facie case for medical malpractice, a plaintiff must demonstrate: a duty owed

---

[5] Plaintiff loosely asserts the following terms in his complaint: "duty to protect[;]" "gross negligence[;]" and "[m]alpractice[.]"  (Doc. No. 1 at 8.)  The Court collectively treats these assertions as raising a medical malpractice claim. To the extent that the Court has unintentionally misconstrued Plaintiff's state-law claims, Plaintiff is directed to clarify such claims in his amended complaint, should he file one.

by the health care professional to the patient; a breach of that duty by the health care professional; the breach was the proximate cause of the harm suffered by the plaintiff; and the damages suffered were a direct result of the harm.  See Mitchell v. Shikora, 209 A.3d 307, 314 (Pa. 2019).  As "[w]ith all but the most self-evident medical malpractice actions there is also the added requirement that the plaintiff must provide a medical expert who will testify as to the elements of duty, breach, and causation."  See Quinby v. Plumsteadville Fam. Prac., Inc., 907 A.2d 1061, 1070-71 (Pa. 2006); Yacoub v. Lehigh Valley Med. Assocs., P.C., 805 A.2d 579, 591 (Pa. Super. Ct. 2002) (explaining that, in order for the appellant to have met her burden of proof, she "was required to provide expert testimony to establish, to a reasonabl[e] degree of medical certainty, that the acts of the . . . nurses deviated from acceptable medical standards and that such deviation was a proximate cause of the harm suffered").

### a.    Defendant Prince

Here, in liberally construing Plaintiff's complaint, and in observing that the Court has already found that Plaintiff's complaint has alleged an Eighth Amendment claim against Defendant Prince, the Court is persuaded that Plaintiff has also alleged a cause of action for medical malpractice against Defendant Prince—again, even if by the thinnest of margins.  As set forth above, Plaintiff alleges the following: that, after he received the Johnson & Johnson vaccine, he lost mobility and experienced

numbness on the left side of his "chest/arm/shoulder[,] and bicep" and that he was "physically impaired[;]" that Defendant Prince subsequently examined Plaintiff during a follow-up visit at the SCI Dallas Medical Department and seemingly acknowledged these complaints and agreed with Plaintiff that the administration of the vaccine should have been delayed for a few weeks; that Defendant Prince "adamantly refused" to refer Plaintiff for treatment to an outside medical facility for non-medical reasons, i.e., for reasons related to a lack of funding within the Commonwealth of Pennsylvania or SCI Dallas; and finally, that following this examination by Defendant Prince, Plaintiff continued to suffer from his various medical complaints. (Id. ¶¶ 35-40.)  Thus, the Court finds that these allegations are sufficient to survive the Court's initial review of Plaintiff's complaint.  Plaintiff is, therefore, permitted to proceed on his state-law medical malpractice claim against Defendant Prince.

### b.   Defendants Jane Doe (1) and Jane Doe (2)

In the complaint, Plaintiff also appears to be asserting a medical malpractice claim against Defendants Jane Doe (1) and Jane Doe (2).  (Doc. No. 1 at 8; id. ¶¶ 17-21.)  Much like Defendant Prince, the Court is persuaded that Plaintiff has alleged a cause of action for medical malpractice against Defendants Jane Doe (1) and Jane Doe (2).  More specifically, Plaintiff alleges as follows: that he came into the care of these Defendants at the SCI Dallas Medical Department on April 9, 2021 (id. ¶¶

16-21); that he informed both of these Defendants that he had a cortisone shot a few days prior (id. ¶¶ 18-19); that he inquired about being prohibited from receiving the vaccine, or being at risk for any potential complications, in light of his recent cortisone shot (id.); and that, regardless of these facts, Defendants Jane Doe (1) and Jane Doe (2) allowed the vaccine to be administered to him (id. ¶¶ 16-21). Thus, in liberally construing the complaint, the Court finds that these allegations are sufficient to survive the Court's initial review of Plaintiff's state law medical malpractice claims against Defendants Jane Doe (1) and Jane Doe (2). Plaintiff is, therefore, permitted to proceed on this claim.[6]

### 2. Fraud

In the complaint, Plaintiff asserts a claim for "fraud." (Doc. No. 1 at 8.) "Pennsylvania recognizes a civil action for fraud." SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 205 (3d Cir. 2022). As this civil action has developed in Pennsylvania common law, a fraud consists of the following six elements:

(1) (a) A misrepresentation or

(b) A concealment;

(2) Which is material to the transaction at hand;

---

[6]  The Court notes that neither Plaintiff's Eighth Amendment failure to provide adequate medical care claims nor state law medical malpractice claims are models of clarity or legal prose. However, the Court is mindful of Plaintiff's pro se status and the current posture of this case—i.e., that the Court is conducting an initial review of his complaint.

23

(3) (a) Made with knowledge of its falsity or recklessness as to whether it is true or false (for a misrepresentation), or

(b) Calculated to deceive (for a concealment);

(4) With the intent of misleading another into relying on it;

(5) Justifiable reliance on the misrepresentation; and

(6) A resulting injury proximately caused by such reliance.

See id.   In order for a plaintiff to prevail on this cause of action, a plaintiff "must prove each of those elements by clear and convincing evidence." See id. (citation omitted).

Here, the Court finds that Plaintiff has not plausibly alleged a claim for fraud. In particular, Plaintiff has not alleged the six (6) elements that are necessary to make a showing of fraud under Pennsylvania law.   As such, the Court finds that the complaint fails to state a claim for fraud upon which relief can granted.  This claim will, therefore, be dismissed from the complaint.

## C.    Leave to Amend

The only remaining issue is, therefore, whether Plaintiff should be granted leave to amend his complaint.  Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of

24

pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted).

However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]" See id. The Court may also deny leave to amend where the proposed amendment would be futile—that is, where the pleading, "as amended, would fail to state a claim upon which relief could be granted." See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted).

In accordance with this standard, the Court finds that it would be futile to grant Plaintiff leave to amend with respect to the following claims: Plaintiff's Section 1983 claims against the SCI Dallas Medical Department and Bureau of Health Services; and Plaintiff's Fourteenth Amendment due process claim concerning a request for copies of his medical records. However, the Court cannot say that granting Plaintiff leave to amend with respect to his remaining claims would be futile and, thus, the Court will grant Plaintiff leave to file an amended complaint in order to attempt to cure the deficiencies identified above. Plaintiff is advised that the amended complaint must be complete in all respects. It must be a new pleading that stands by itself without reference to the original complaint or

any other document already filed.  The amended complaint shall set forth

Plaintiff's claims in short, concise, and plain statements as required by Rule 8 of

the Federal Rules of Civil Procedure.  Finally, Plaintiff is cautioned that neither

conclusory allegations nor broad allegations will set forth a cognizable claim.

## IV.   CONCLUSION

To conclude, the Court will partially dismiss Plaintiff's complaint (Doc. No.

1) for failure to state a claim upon which relief may be granted pursuant to 28

U.S.C. § 1915(e)(2).  The Court will also grant Plaintiff leave to file an amended

complaint.  An appropriate Order follows.


Dated: November 21, 2022                         s/ Sylvia H. Rambo
                                                 SYLVIA H. RAMBO
                                                 United States District Judge