**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FRANCISCO PEREZ,** | : | |
| **Plaintiff** | : | **No. 1:22-cv-01087** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **SUPERINTENDENT KEVIN** | : | |
| **RANSOME, <u>et</u> <u>al.</u>,** | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Pending before the Court is Defendant's motion to dismiss the complaint, filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. No. 16.) Also pending before the Court is Plaintiff's motion seeking the appointment of counsel. (Doc. No. 26.) For the reasons set forth below, the Court will grant Defendant's motion to dismiss and will deny without prejudice Plaintiff's motion seeking the appointment of counsel.

## I.   BACKGROUND

### A.   Procedural Background

Plaintiff is a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"). On July 12, 2022, while Plaintiff was incarcerated at State Correctional Institution Dallas ("SCI Dallas") in Dallas, Pennsylvania, he commenced the above-captioned action by filing a <u>pro se</u> complaint pursuant to the provisions of 42 U.S.C. § 1983 ("Section 1983"). (Doc. No. 1.) On that same date,

he also filed a motion for leave to proceed in forma pauperis, as well as his prisoner trust fund account statement.  (Doc. Nos. 2, 3.)

In his complaint, Plaintiff named as defendants Johnson and Johnson Incorporated ("Johnson & Johnson"), the Bureau of Health Services at SCI Dallas, the Medical Department at SCI Dallas, and the following individuals, all of whom worked at SCI Dallas during the period of time relevant to Plaintiff's claims: Superintendent Kevin Ransome ("Ransome"); Dr. Prince ("Prince"); PA Woolfolk ("Woolfolk"); CRNP Deboer ("Deboer"); CHCA Martin ("Martin"); Corrections Officer Bohinski ("Bohinksi"); Nurse Jane Doe (1) ("Jane Doe (1)"); and Nurse Jane Doe (2) ("Jane Doe (2)").  (Doc. No. 1 at 3–6.)

Plaintiff's complaint generally averred that the events giving rise to his claims occurred at SCI Dallas on or about April 9, 2021, when the Johnson & Johnson vaccine for COVID-19 was administered to him only days after he had received a cortisone shot.  (Id. at 7.)  Plaintiff claimed that this combination of the vaccine and the cortisone shot caused the left side of his "chest/arm/shoulder[,] and bicep to lose mobility/numbness" and left him "physically impaired."  (Id.)  Plaintiff further claimed that, following this incident, he was not afforded adequate medical care, and he was not allowed to be examined at an outside medical facility for "such injuries." (Id.)

2

In connection with these allegations, Plaintiff's complaint asserted violations of his constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution (id. at 8; id. ¶¶ 58–60), as well as state law claims for medical malpractice and fraud (id. at 8; id. ¶¶ 57, 69). As for relief, Plaintiff sought declaratory and monetary relief. (Id. ¶ 70.)

On November 21, 2022, the Court issued a Memorandum and Order granting Plaintiff's motion for leave to proceed in forma pauperis (Doc. No. 2), deeming his complaint filed, and partially dismissing his complaint as follows:

1.  Plaintiff's Section 1983 claims against Defendants SCI Medical Department and Bureau of Health Services were dismissed with prejudice because these entities are not amenable to suit under Section 1983 since they have Eleventh Amendment immunity and are not considered "persons" for purposes of Section 1983;

2.  Plaintiff's Fourteenth Amendment due process claim based upon his request for copies of his medical records was dismissed with prejudice because: Plaintiff asserted this claim against Defendant SCI Dallas Medical Department, who is not amenable to suit under Section 1983; Plaintiff failed to explain how he was harmed by the alleged failure of this Defendant to provide him with copies of his medical records; and the Court was unaware of any state or federal constitutional right requiring that a state prisoner be provided with copies of his medical files upon request;

3.  Plaintiff's Section 1983 claims against Defendant Johnson and Johnson were dismissed without prejudice to Plaintiff asserting allegations in an amended complaint which could show that this Defendant was acting under color of state law;

4.  Plaintiff's Eighth Amendment claims against Defendants Deboer, Woolfolk, Martin, Ransome, and Bohinski were dismissed without prejudice because (a) there was a complete absence of allegations in

3

Plaintiff's complaint that would give rise to a plausible inference that Defendants Deboer or Woolfolk were personally involved in any asserted deprivation of Plaintiff's constitutionally protected rights, and (b) there were no allegations of deliberate indifference with respect to Defendants Martin, Ransome, and Bohinski;

5.      Plaintiff's state law claim for fraud was dismissed without prejudice because Plaintiff's complaint did not plausibly allege such a claim under Pennsylvania law; and finally,

6.      Plaintiff was permitted to proceed on his Eighth Amendment claim against Defendant Prince and his state law medical malpractice claims against Defendants Prince, Jane Doe (1), and Jane Doe (2).

(Doc. Nos. 7, 8.)  Plaintiff was also granted leave to file an amended complaint.  (Id.)

On December 27, 2022, Plaintiff filed his amended complaint against Defendant Prince, Jane Doe 1, and Jane Doe 2.  (Doc. No. 9.)  On January 25, 2023, the Court issued an Order deeming his amended complaint filed and directing the Clerk of Court to serve, inter alia, a copy of the amended complaint on the named Defendants.  (Doc. No. 10.)  After the Court issued that Order, however, Plaintiff filed a second amended complaint naming Prince, Taylor Mack ("Mack") (as Jane Doe 1), and Jane Doe 2 as Defendants.  (Doc. Nos. 12, 12-1.)  As a result, the Court issued a subsequent Order deeming the second amended complaint filed and directing the Clerk of Court to serve, inter alia, a copy of Plaintiff's second amended complaint on the named Defendants.  (Doc. No. 13.)

On April 19, 2023, counsel entered an appearance on behalf of Defendant Mack and filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules

4

of Civil Procedure, followed by a supporting brief.  (Doc. Nos. 15 through 17.)  On April 21, 2023, the Court—observing that counsel had neither entered an appearance on behalf of Defendant Prince nor had Defendant Dr. Prince filed his waiver of service with the Court—issued an Order directing (1) the Clerk of Court to issue a summons and (2) the United States Marshals Service to serve the second amended complaint (Doc. No. 12), summons, the Court's March 8, 2023 Order (Doc. No. 13), and the Court's April 21, 2023 Order on Defendant Dr. Prince (Doc. No. 18).

Thereafter, on July 27, 2023 counsel entered an appearance on behalf of Defendant Prince (Doc. Nos. 21, 22) and filed an answer to the second amended complaint with affirmative defenses (Doc. No. 23).  After receiving Defendant Prince's answer, the Court ordered Defendant Prince and Plaintiff to complete discovery by February 1, 2024, and to file any dispositive motions on or before April 1, 2024.  (Doc. No. 25.)  Finally, on August 14, 2023, Plaintiff filed a motion seeking the appointment of counsel.  (Doc. No. 26.)

Accordingly, Defendant Mack's motion to dismiss Plaintiff's second amended complaint and Plaintiff's motion seeking the appointment of counsel are ripe for the Court's resolution.

**B.     Factual Background[1]**

On or about April 9, 2021, Plaintiff arrived at the medical department at SCI

Dallas—which was located in the institution's gymnasium—to be screened and to

have a Johnson and Johnson vaccine administrated to him with respect to COVID-

19. (Doc. No. 12 at 4–5.)  Plaintiff was screened by Defendant Mack, who inquired

about whether Plaintiff had any prior "conditions," including if Plaintiff had the "flu

vaccination[,]" which would have precluded Plaintiff from, and/or delayed him in,

receiving the COVID-19 vaccine.  (Id. at 5.)  Plaintiff explained to Defendant Mack

that, just a few days prior, he had received a cortisone shot.  (Id.)  Defendant Mack

instructed co-Defendant Jane Doe (2) to proceed with administering the COVID-19

vaccine to Plaintiff.  (Id.)

Plaintiff explained to Defendant Jane Doe 2 that he had a cortisone shot just

a few days prior to arriving for the COVID-19 vaccine, and he inquired as to whether

or not the vaccine would have any adverse effects and/or if the vaccine would be

safe in combination with the cortisone shot.  (Id.)  Defendant Jane Doe 2 assured

---

[1] In accordance with the legal standard set forth below, the Court accepts the
allegations in Plaintiff's second amended complaint as true and draws all reasonable
inferences therefrom in the light most favorable to Plaintiff.  See Kedra v. Schroeter,
876 F.3d 424, 434 (3d Cir. 2017).  In addition, the Court heeds the long-standing
principle that pro se documents are "to be liberally construed."  See Estelle v.
Gamble, 429 U.S. 97, 106 (1976).  Thus, Plaintiff's pro se complaint, "however
inartfully pleaded," will be held to "less stringent standards than formal pleadings
drafted by lawyers[.]"  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Plaintiff that he would not experience any adverse effects or complications from the COVID-19 vaccine.  (Id. at 6.)  Despite Plaintiff's concerns, Defendant Jane Doe 2 administrated the COVID-19 vaccine to him.  (Id.)

After receiving the vaccine, Plaintiff returned to his housing unit where he ultimately developed "severe/catastrophic complications [in that he] lost mobility on the left side of his chest/arm/bicep and shoulder."  (Id. (explaining that he "has been subjected to pain/numbness" and "has also become physically impaired and/or possibly permanently disfigured").)  These "adverse effects" have "also taken a toll on Plaintiff's mental health.  (Id. at 8.)

Plaintiff was subsequently "signed up for Sick Call" so that he could be seen by the medial department at SCI Dallas.  (Id. at 6–7.)  In August of 2021, Plaintiff was seen by co-Defendant Prince who "agreed" that the COVID-19 vaccine "should have been delayed for a few weeks due to the cortisone shot[.]"  (Id. at 7.)  Defendant Prince, however, refused Plaintiff's request to be seen for additional medical assessment by an outside entity.  (Id. (stating that Defendant Prince indicated that "the State lacks funding").)

Plaintiff claims that "there would not be a need for" any medical treatment had Defendants Mack and Jane Doe (2) "followed Pennsylvania Dept. policy/protocol/J&J vaccine/instructions/Doctor's orders/recommendations/laws of the Commonwealth/Federal law and/or United States Constitution."  (Id. at 9); see

<u>also</u> (<u>id.</u> at 11 (alleging that the vaccine was "premature with respect to being approved by the Food and Drug Administration")).  Plaintiff further claims that he pursued his administrative remedies with respect to the COVID-19 vaccine and the adverse effects he suffered, but to no avail.  (<u>Id.</u> at 7, 8, 9, 10–11.)

In connection with all of these allegations, Plaintiff asserts that Defendants violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution.  (<u>Id.</u> at 11, 13.)  Plaintiff further asserts a state law claim for negligent treatment or malpractice.  (<u>Id.</u>)  Plaintiff seeks declaratory and monetary relief.  (<u>Id.</u> at 14.)

## II.   LEGAL STANDARD

In order to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  And a claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>See</u> <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion, the court "accept[s] as true all well-pled factual allegations in the complaint and all reasonable inferences that can be

drawn from them." <u>See</u> <u>Taksir v. Vanguard Grp.</u>, 903 F.3d 95, 96-97 (3d Cir. 2018) (citation and internal quotations omitted). The court also construes the factual allegations "in the light most favorable to the plaintiff[.]" <u>See</u> <u>In re Ins. Brokerage Antitrust Litig.</u>, 618 F.3d 300, 314 (3d Cir. 2010) (citation and internal quotations omitted). The court, however, is not required to credit "conclusions of law" or to draw "unreasonable factual inferences." <u>See</u> <u>Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.</u>, 450 F.3d 130, 133 (3d Cir. 2006).

Additionally, the United States Court of Appeals for the Third Circuit has outlined a three-step process to determine whether a complaint meets the pleading standard established by <u>Twombly</u> and <u>Iqbal</u>. <u>See</u> <u>Connelly v. Lane Const. Corp.</u>, 809 F.3d 780, 787 (3d Cir. 2016). First, the court "must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.'" <u>See</u> <u>id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 675) (alterations in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" <u>See</u> <u>id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 679). And, third, "'[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" <u>See</u> <u>id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 679).

## III.   DISCUSSION

### A.   Defendant Mack's Motion to Dismiss

#### 1.   Plaintiff's Eighth Amendment Claim

"The Eighth Amendment . . . prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes."  See Wilson v. Seiter, 501 U.S. 294, 296–97 (1991).   However, the United States Constitution "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities, are sufficiently grave to form the basis of an Eighth Amendment violation."  See Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal citations and quotation marks omitted).   Thus, in order "[t]o determine whether prison officials have violated the Eighth Amendment, [courts] apply a two-prong test[.]"  See Porter v. Pennsylvania Dep't of Corr., 974 F.3d 431, 441 (3d Cir. 2020) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

Under the first prong, courts consider whether the deprivation was "'objectively, sufficiently serious[,]" that is, whether "a prison official's act or omission [resulted] in the denial of the minimal civilized measure of life's necessities[.]'"  See id. (quoting Farmer, 511 U.S. at 834).  And, under the second prong, courts must consider whether the prison official was "'deliberate[ly] indifferen[t] to inmate health or safety.'"  See id. (quoting Farmer, 511 U.S. at 834).

10

Regarding the first prong, life's necessities include food, clothing, shelter, medical care, and reasonable safety.  See Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 418 (3d Cir. 2000) (stating that "when the government takes a person into custody against his or her will, it assumes responsibility for satisfying basic human needs such as food, clothing, shelter, medical care, and reasonable safety" (citing DeShaney v. Winnebago Co. Dep't of Social Svcs., 489 U.S. 189, 199-200 (1989))); Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 256 (3d Cir. 2010) (explaining that the Eighth Amendment imposes a duty upon prison officials "to ensure that inmates receive adequate food, clothing, shelter, and medical care, and [to ensure that prison officials] take reasonable measures to guarantee the safety of the inmates" (citations and internal quotation marks omitted)).

Regarding the second prong, a prison official does not act with deliberate indifference "unless the official knows of and disregards an excessive risk to inmate health or safety"—that is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  See Farmer, 511 U.S. at 837.  "The knowledge element of deliberate indifference is subjective, . . . meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware."  Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 837–38).

In accordance with these standards, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated[,]" see Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999), and prison officials violate the Eighth Amendment "when they are deliberately indifferent to an inmate's serious medical need." See Dooley, 957 F.3d at 374 (citing Estelle, 429 U.S. at 106); Rouse, 182 F.3d at 197 (explaining that plaintiffs must demonstrate the following two (2) elements: (1) "that the defendants were deliberately indifferent to their medical needs[;]" and (2) "that those needs were serious").

"[T]he concept of a serious medical need, as developed in Estelle, has two components, one relating to the consequences of a failure to treat and one relating to the obviousness of those consequences." See Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991). The "condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death[,]" and "the condition must be one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." See id. (citation and internal quotation marks omitted).

The concept of "deliberate indifference" requires that the prison official actually knew of and disregarded "an excessive risk to inmate health or safety[.]" See Farmer v. Brennan, 511 U.S. 825, 837 (1994). The Third Circuit has found

deliberate indifference when a "prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." See Rouse, 182 F.3d at 197 (citation omitted).

Here, Defendant Mack argues that Plaintiff's second amended complaint fails to allege a violation under the Eighth Amendment (Doc. No. 17 at 6–12), and the Court agrees.  Simply stated, Plaintiff's second amended complaint sets forth no allegations that Defendant Mack was deliberately indifferent to Plaintiff's medical needs—i.e., that she actually knew of and disregarded an excessive risk to Plaintiff's health or safety.  See Farmer, 511 U.S. at 837 (explaining that the prison official must be aware of facts from which the inference could be drawn that an excessive risk of harm exists, and the prison official must also draw that inference); Beers-Capitol, 256 F.3d at 133 (explaining that "it is not sufficient that the official should have been aware" (citing Farmer, 511 U.S. at 837–38)).  In addition, Plaintiff's second amended complaint sets forth no allegations that Defendant Mack was involved in the asserted denial of Plaintiff's requests for subsequent medical assessment by an outside entity after the COVID-19 vaccine was administered to him on April 9, 2021.  Accordingly, the Court finds that Plaintiff's second amended complaint fails to state an Eighth Amendment claim upon which relief can be granted

13

against Defendant Mack.  As such, Plaintiff's Eighth Amendment claim will be dismissed against this Defendant.

### 2.  Plaintiff's State Law Claim

Defendants argue that Plaintiff's alleged injuries resulted from the administration of covered countermeasures under the Public Readiness and Emergency Preparedness Act ("PREP Act" or "Act"), so as to entitle Defendant Mack to immunity from liability for Plaintiff's state law claim of negligent treatment or malpractice.  (Doc. No. 17 at 14–17.)  The PREP Act, which was passed by Congress in 2005, authorizes the Secretary of the Department of Health and Human Services to issue a declaration determining "that a disease or other health condition or other threat to health constitutes a public health emergency . . . ."  See 42 U.S.C. § 247d-6d(b)(1) (2005).  If the Secretary issues such a declaration, the PREP Act immunizes "a covered person" from "suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure . . . . "  See id. § 247d-6d(a)(1). A covered person includes a qualified person who prescribed, administered, or dispensed such countermeasure.  See id. § 247d-6d(i)(2)(B).

If immunity applies, an injured person may be compensated "for covered injuries directly caused by the administration or use of a covered countermeasure"

from the "Covered Countermeasure Process Fund" <u>See</u> 42 U.S.C. § 247d-6e(a). However, "[n]o court of the United States, or of any State, shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary" in administering the Process Fund. <u>See</u> <u>id.</u> § 247d-6e(b)(5)(C).   In addition, any compensation through the Process Fund "shall be exclusive of any other civil action or proceeding for any claim or suit this section encompasses[.]" <u>See</u> <u>id.</u> § 247d-6e(d)(4).  The sole exception is "an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct," <u>see</u> <u>id.</u> § 247d-6d(d)(1), in which case such an action "shall be filed and maintained only in the United States District Court for the District of Columbia[,]" <u>see</u> <u>id.</u> § 247d-6d(e)(1).

On March 17, 2020, the Secretary declared the spread of COVID-19 a public health emergency. <u>See</u> Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198 (Mar. 17, 2020).  As defined by the Fourth Amendment to the Declaration, "covered countermeasures" include "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom, or any device used in the administration of any such product, and all components and constituent materials of any such product." <u>See</u> <u>id.</u> at 15202.

The "[a]dministration" of covered countermeasures for the COVID-19 emergency "means physical provision of the countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients, management and operation of countermeasure programs, or management and operation of locations for purpose of distributing and dispensing countermeasures." See id. Finally, "whether immunity is applicable will depend on the particular facts and circumstances" of each case[.]" See id. at 15200.

Here, Plaintiff, who has not opposed the instant motion to dismiss, does not dispute that Defendant Mack is a covered person under the Act or that the allegations in his second amended complaint concern the use of covered countermeasures under the Act. In addition, Plaintiff's second amended complaint contains allegations that the injuries he sustained were a direct result of Defendant Mack administering a COVID-19 vaccine to him—just days after he had received a cortisone shot—in an effort to mitigate the spread of COVID-19 at SCI Dallas. See (Doc. No. 12 at 4–5, 7). Accordingly, the Court concludes that Plaintiff's state law claim of negligent treatment or malpractice is, in essence, a claim for loss "caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure[.]" See 42 U.S.C. § § 247d-6d(a)(1); see also Est. of Maglioli v. Andover Subacute Rehab. Ctr. I, 478 F. Supp. 3d 518, 532 (D.N.J. 2020),

aff'd sub nom. Maglioli v. All. HC Holdings LLC, 16 F.4th 393 (3d Cir. 2021), (stating that the plaintiffs' complaints did not allege that their injuries arose from, e.g., the defendants' administration to them of vaccines or medicines, which are "activities that the PREP Act promotes by affording immunity[,]" but, instead, explaining that the plaintiffs were claiming that the defendants committed negligence in that, among other things, "they failed to take countermeasures, some of them allegedly federally required" (emphasis in original)).

As a result, the Court concludes that such countermeasures undertaken by Defendant Mack invoke the immunity protections of the PREP Act.  The Court will, therefore, grant Defendant Mack's motion to dismiss on the basis that she is entitled to immunity from Plaintiff's state law claim of negligent treatment or malpractice under the Act.

### B.    Plaintiff's Motion for the Appointment of Counsel

Plaintiff has filed a motion for the appointment of counsel.  (Doc. No. 26.)  In support, he alleges that he has limited knowledge of the law and that, because of his incarceration, he has restricted access to legal resources.  (Id. at 1.)  Plaintiff further alleges that he cannot afford counsel, as he is proceeding in forma pauperis and that counsel would be better able to present his evidence, cross-examine witnesses, and conduct necessary investigations.  (Id.)  Finally, Plaintiff alleges that he "is not

mentally competent to try this case[.]"   (Id.)  Thus, based upon all of these allegations, Plaintiff requests that the Court appoint him counsel.  (Id.)

The Court begins its discussion with the basic principle that, although indigent civil litigants have no constitutional or statutory right to the appointment of counsel, district courts have broad discretionary power to request appointed counsel for such litigants pursuant to 28 U.S.C. § 1915(e)(1).  See Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2002) (citations omitted).  The Third Circuit has "outlined a two-step process" that district courts are to follow when deciding whether to request appointed counsel to represent an indigent civil litigant.  See Houser v. Folino, 927 F.3d 693, 697 (3d Cir. 2019).

First, as a threshold inquiry, the district court must consider whether the plaintiff's case has some arguable merit in fact and law.  See Montgomery, 294 F.3d at 498–99 (citations omitted).  Second, if the district court determines that the plaintiff's case has some arguable merit in fact and law, then the district court is to consider other factors, including: (1) the plaintiff's ability to present his own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be required and the plaintiff's ability to pursue such investigation; (4) the extent to which the case is likely to turn on credibility determinations; (5) whether the case will require testimony from expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf.  See Houser, 927 F.3d at 697 (citations

18

omitted).

This list, however, "is not meant to be exhaustive." See Tabron v. Grace, 6 F.3d 147, 157 (3d Cir. 1993); see also Houser, 927 F.3d at 700 (stating that "[w]e have always emphasized that [these] factors are only a guidepost for district courts in their exercise of the broad statutory discretion granted to them by Congress[,] and that "[t]hey are not exhaustive, nor are they each always essential"). Rather, the district court must determine on a case-by-case basis whether a request for appointed counsel is warranted. See Tabron, 6 F.3d at 157–58.

Having reviewed Plaintiff's motion seeking the appointment of counsel, the Court concludes that counsel is not warranted at this time. Under the two (2)-step process outlined above, the Court must consider whether Plaintiff's case has some arguable merit in fact and law and, if so, whether the pertinent factors warrant the appointment of counsel. See Houser, 927 F.3d at 697.

Even if the Court were to assume arguendo that Plaintiff's claims have some arguable merit, the Court would still deny his motion seeking the appointment of counsel at this time. While the Court appreciates Plaintiff's assertions that he is currently incarcerated and that his case will require "necessary investigations" (Doc. No. 26 at 1), the Court finds that he has, nevertheless, demonstrated the ability to read, write, and understand English, as well as the apparent ability to litigate this action pro se, as illustrated by the filing of his complaint, his certified motion for

19

leave to proceed in forma pauperis, his amended complaint, his second amended complaint, and his instant motion seeking the appointment of counsel.  (Doc. Nos. 1, 2, 9, 12, 26.)  Accordingly, given the Court's duty to liberally construe Plaintiff's pro se pleadings, see Riley v. Jeffes, 777 F.2d 143, 147–48 (3d Cir. 1985), coupled with his apparent ability to litigate this action, the Court concludes that the appointment of counsel is not warranted at this time.

Additionally, with respect to Plaintiff's concerns regarding the difficulties he will face in this litigation due to his incarceration, the Court notes that, if he were to need extensions of time to respond to filings and Orders in this matter, which would require a response from him, then he need only request an extension from the Court at the appropriate time.  And, finally, in the event that future proceedings would otherwise demonstrate the need for counsel, then the Court may reconsider this matter either sua sponte or upon a motion properly filed by Plaintiff.

## IV.  CONCLUSION

Accordingly, for all of the foregoing reasons, the Court will grant Defendant Mack's motion to dismiss (Doc. No. 16), and the Court will deny without prejudice Plaintiff's motion for the appointment of counsel (Doc. No. 26).  An appropriate Order follows.

Dated: January 18, 2024                    s/ Sylvia H. Rambo
                                           SYLVIA H. RAMBO
                                           United States District Judge